Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CRISTINA JACKSON, | No.  C06-789RSL |
| Plaintiff, | PLAINTIFF'S DECLARATION IN SUPPORT OF DEFAULT JUDGMENT AS TO DEFENDANT BARBARA MASON ONLY |
| vs. | |
| BARBARA MASON, et al. | **NOTE ON MOTION CALENDAR:** |
| Defendants. | **Friday, February 2, 2007**<br>**(Without Oral Argument)** |

Cristina Jackson declares and states as follows:

1.      I am plaintiff in this action which was commenced in King County Superior Court and later removed to federal court. I make this declaration based upon my personal knowledge and in support of judgment against defendant Barbara Mason only. I am legally competent to testify as to all matters stated herein.

2.      I was married to Robert F. Jackson from 1987 to his death on December 5, 2005. Mr. Jackson and I were legally separated at the time of his death. A decree of legal separation had entered August 11, 2004 under King County Superior Court Cause No. 04-3-12639-1KNT. A copy is attached hereto as **Exhibit 1**.

3.      I had filed for legal separation due to the overwhelming debts that my late husband incurred. Mr. Jackson lost his job in 2002. I became the sole breadwinner.

PLAINTIFF'S DECLARATION IN SUPPORT
OF DEFAULT JUDGMENT AS TO
DEFENDANT BARBARA MASON ONLY - 1

SIDERIUS LONERGAN & MARTIN LLP
ATTORNEYS AT LAW
500 UNION STREET, STE 847
SEATTLE, WASHINGTON 98101
(206) 624-2800
FAX (206) 624-2805

1 | Between 2002 and 2003, while he was unemployed, he incurred substantial credit card

2 | debt. The debts were community property obligations and I didn't learn about the extent

3 | of the debt until late 2003. I filed for legal separation in early 2004.

4 |

5 |      4.     Mr. Jackson and I agreed upon the terms of the Decree of Legal Separation

6 | . Mr. Jackson was awarded a 2002 Toyota Highlander automobile.   Paragraph 3.4(d)

7 | provided that our marital residence was to be sold and Mr. Jackson would not share in the

8 | proceeds because I was "assuming the responsibility for paying off the majority of the

9 | community debt."

10 |

11 |      5.     I was awarded the marital residence which was thereafter sold on July 22,

12 | 2004. We had no equity in the home and I was required to pay $692.84 in order to make

13 | the transaction close. A copy of the Settlement Statement is attached hereto as **Exhibit 2**.

14 |      6.     The Decree of Legal Separation (**Exhibit 1** hereto) at Paragraphs 3.6 and 3.7

15 | lists the community debts to be paid. These obligations totaled $164,000, not including the

16 | mortgage on the house. The Decree, at Paragraph 3.9, states as follows:

17 |

18 |      However, should the wife survive the husband, considering the magnitude
19 |      of debt assigned to the wife, proceeds from the husband's estate should be
     awarded to the wife to help settle all outstanding debts.  Any insurance
20 |      policy/policies owned by the deceased shall be awarded to the wife for the
     same reason.  In the event that dissolution of marriage is ordered, survivor
21 |      benefits on said insurance policy/policies shall be awarded to the wife as
     though the dissolution was never ordered.

22 |      7.     I was always aware that an insurance policy insuring Mr. Jackson's life

23 | offered by the Office of Federal Employee's Group Life Insurance (OFEGLI) existed

24 | through defendant Metropolitan Life Insurance Company, aka Met Life. At the time of Mr.

25 | Jackson's death, I was unaware that he had, contrary to the Decree of Legal Separation,

26 |

27 | , changed the beneficiary designation on the life insurance policy from me to his daughter,

28 |

PLAINTIFF'S DECLARATION IN SUPPORT
OF DEFAULT JUDGMENT AS TO
DEFENDANT BARBARA MASON ONLY - 2

SIDERIUS LONERGAN & MARTIN LLP
ATTORNEYS AT LAW
500 UNION STREET, STE 847
SEATTLE, WASHINGTON 98101
(206) 624-2800
FAX (206) 624-2805

defendant Barbara Mason.  Barbara Mason was known to me as Mr. Jackson's daughter from his first marriage, but since Barbara and Robert had an estranged relationship, I had never met her.

8.     On December 15, 2005, I traveled to Hawaii for Mr. Jackson's funeral services.  I met Barbara Mason in person for the first time.  However, I had spoken with her on the telephone and had written to her several times prior to that.

9.     Following the funeral, I provided Barbara Mason with a copy of the Decree of Legal Separation and pointed out to her the provision on settlement of debts.  We also discussed the life insurance policy with Met Life and the requirement that proceeds be used to settle outstanding debts.  Defendant Barbara Mason agreed that the obligations listed on the Decree of Legal Separation should be paid upon receipt of life insurance proceeds.

10.     During a telephone conversation sometime around the first week of January, 2006, Barbara Mason agreed that I should complete the insurance claim form and then mail it to her for her signature.  During the same telephone call we went over the questions on the claim form.   Barbara provided me requested information including her birth date and social security number.  Additionally, Barbara Mason agreed that my mailing address should be used on the claim to keep me in the loop on subsequent correspondence as the insurance claim was processed.   In return, she asked me to release my record interest in the Toyota Highlander automobile that Mr. Jackson had shipped to Hawaii several months prior to his death.   My name was still listed on the title as legal owner.  I agreed and provided the necessary paperwork to Barbara Mason.

PLAINTIFF'S DECLARATION IN SUPPORT
OF DEFAULT JUDGMENT AS TO
DEFENDANT BARBARA MASON ONLY - 3

SIDERIUS LONERGAN & MARTIN LLP
ATTORNEYS AT LAW
500 UNION STREET, STE 847
SEATTLE, WASHINGTON 98101
(206) 624-2800
FAX (206) 624-2805

11. On or around January 24, 2005, I mailed the unsigned completed insurance claim form to Barbara Mason for her signature. I enclosed an envelope pre-addressed to the Office of Federal Employees Group Life Insurance (OFEGLI) and asked Barbara Mason to mail the form directly to OFEGLI after she signed it.

12. On or around January 31, 2006 I received the claim form back from Barbara Mason. It contained her signature. I immediately mailed the form to OFEGLI for processing.

13. On February 11, 2006 I received by mail a packet from Met Life addressed to Barbara Mason. I telephoned Barbara to let her know I had received the packet and while I had her on the phone, she told me to open the packet from Met Life. I described to her the contents which included a booklet of 10 checks in Barbara's name, a letter of confirmation that the life insurance proceeds in the approximate sum of $167,000 had been paid out to a "Total Control Account" maintained by Met Life. There was also materials describing the account. **Exhibit 3** hereto is a copy of some of the materials received from Met Life regarding the Total Control Account set up in Barbara Mason's name. It is my understanding from the materials that death benefit proceeds were paid into this account and Barbara Mason has "total control" over the account. In other words, defendant Met Life no longer holds life insurance proceeds subject to a claim but has distributed the life insurance proceeds to Barbara Mason in the total control account. The checks that were provided are in the name of Barbara Mason and it was my understanding that all proceeds in the account were available to Barbara Mason.

PLAINTIFF'S DECLARATION IN SUPPORT
OF DEFAULT JUDGMENT AS TO
DEFENDANT BARBARA MASON ONLY - 4

SIDERIUS LONERGAN & MARTIN LLP
ATTORNEYS AT LAW
500 UNION STREET, STE 847
SEATTLE, WASHINGTON 98101
(206) 624-2800
FAX (206) 624-2805

1

2

3

4

14.     On February 11, 2006 I mailed to Barbara a booklet of 10 checks while I retained the rest of the packet until the debts were paid off. I also mailed Barbara a list of the debts to be paid along with payment stubs or payment addresses.

5

6

7

8

9

10

11

12

15.     On February 15, 2006 I received from Barbara two signed post dated checks, one written out to Watermark Credit Union in the amount of $33,211.17 and one written to me in the amount of $50,000, specifically earmarked to pay off Wells Fargo and American Express. I called Barbara to ask about the other creditors and she said that the checks were being mailed directly to them. She did not tell me at that time which creditors she was going to pay. I deposited the Watermark Credit Union check and the $50,000 check.

13

14

15

16

17

18

16.     On February 21, 2006 I called Barbara to thank her for sending me the checks and inquired which other creditors she had paid. She said she would call me back but I did not hear from her. I confirmed on-line that 5 other creditors were paid. However, I subsequently learned that Barbara Mason apparently had a change of heart and somehow stopped payment on all of the checks she had issued.

19

20

21

22

23

24

17.     By late February, 2006, it had become clear to me that Barbara Mason intended to keep all funds in the total control account and breach our agreement that credit obligations set forth in the Decree of Legal Separation would be paid with the money. For weeks I tried to contact Barbara to get an explanation, but heard nothing. I was not able to access the total control account because it is in Barbara Mason's name.

25

26

27

18.     I filed the lawsuit in King County Superior Court in order to force Barbara Mason to abide by our agreement and pay the debts required to be paid by the proceeds from the life insurance policy. Met Life was joined solely as the financial institution holding

28

PLAINTIFF'S DECLARATION IN SUPPORT
OF DEFAULT JUDGMENT AS TO
DEFENDANT BARBARA MASON ONLY - 5

SIDERIUS LONERGAN & MARTIN LLP
ATTORNEYS AT LAW
500 UNION STREET, STE 847
SEATTLE, WASHINGTON 98101
(206) 624-2800
FAX (206) 624-2805

1  the funds in a total control account. At no time have I attempted to claim beneficiary status

2  to insurance proceeds held by Met Life which were properly paid out to the beneficiary

3  designated on the insurance policy.  Met Life should have no interest in the dispute

4
5  between Barbara Mason and myself since insurance policy proceeds were paid out to the

6  account in Barbara Mason's name. I am requesting that Met Life be required to tender the

7  total control account funds into the registry of the court and be dismissed from this action.

8      19.    The obligations listed on the Decree of Legal Separation (**Exhibit 1**) for which

9  I seek judgment against Barbara Mason are as follows:

10
| | | |
|---|---|---|
| Wells Fargo Bank: | $21,422.74 | Mr.   Jackson's   obligation pursuant to Paragraph 3.6 of the Decree for which I was jointly liable and proceeded to pay after his death. |
| Watermark   Credit Union | ($33,659.67) | This date of death balance is a loan on the 2003 Lexus automobile awarded to me.  I do not seek recovery for this obligation. |
| Bank One | $22,487.00 | Date of death balance |
| American Express | $ 9,032.00 | Date of death balance |
| Chase Bank | $ 9,000.00 | This account was transferred to Discover card to take advantage of a zero percent APR and represents the date of death balance for this obligation. |
| Sears Card and Navy Federal Credit Union | $14,950.00 | These accounts were consolidated into a GE Money account and this figure represents the combined date of death balance due. |

23      The total date of death balances due on all of the obligations referenced in the

24
25  Decree of Legal Separation for which I am responsible, less the Watermark Credit Union

26  obligation for the automobile (which I drive) is $76,891.74.  I have attached documentation

27  proving these balances as **Exhibit 4**.

28
PLAINTIFF'S DECLARATION IN SUPPORT
OF DEFAULT JUDGMENT AS TO
DEFENDANT BARBARA MASON ONLY - 6

SIDERIUS LONERGAN & MARTIN LLP
ATTORNEYS AT LAW
500 UNION STREET, STE 847
SEATTLE, WASHINGTON 98101
(206) 624-2800
FAX (206) 624-2805

20.    I am requesting judgment against Barbara Mason for the total sum of $76,891.74 representing obligations which were required to be paid by the Decree of Legal Separation and which Barbara Mason had agreed to pay. The balance of funds held in the Met Life checking account can and should be disbursed to Barbara Mason. I make no claim to those funds.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

SIGNED AT Seattle, Washington, this 3 day of December, 2006.

Cristina Jackson

PLAINTIFF'S DECLARATION IN SUPPORT
OF DEFAULT JUDGMENT AS TO
DEFENDANT BARBARA MASON ONLY - 7

SIDERIUS LONERGAN & MARTIN LLP
ATTORNEYS AT LAW
500 UNION STREET, STE 847
SEATTLE, WASHINGTON 98101
(206) 624-2800
FAX (206) 624-2805